## Case No. 4,207.

DUTILH et al. v. MAXWELL.

[2 Blatchf. 541.] [1]

Circuit Court, S. D. New York. Feb., 1853.

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

John S. McCulloh, for plaintiffs.

J. Prescott Hall, Dist. Atty., for defendant.

BETTS, District Judge. The importations in question in this case were of merchandise purchased in Austria and invoiced and shipped at Trieste in June and September, 1849, and entered at the custom-house in New-York in August, September and October, 1849. The purchase-prices of the goods were stated, in the invoices and entries, in the paper currency of Austria, from which a deduction on some of $28\frac{1}{2}$ per cent., and on some of $27\frac{1}{2}$ per cent., was claimed by the plaintiffs at the custom-house, to bring the invoice prices in florins to the specie standard. The values of the goods were, however, rated by the collector according to the nominal paper prices, and duties were exacted on those values. A protest in writing was made at the time by the plaintiffs, to the sufficiency of which in law no objection is taken on the part of the defendant. No consular certificate of the United States consul at Trieste, showing the depreciation of the invoice currency below the specie standard, was offered by the plaintiffs or demanded at the custom-house by the collector or any of his officers, nor is there evidence that the collector exacted a bond for its after production. The plaintiffs brought their action to recover back the duties paid on the differences between the specie value of the importations and that expressed in the invoices in the depreciated currency.

This court has decided, in two cases heretofore before it, that the government was entitled, by the revenue laws, to exact duties only on the specie value of goods in the

country of production or exportation, and that, when the purchase-price was exhibited in a depreciated currency, the importer might prove, as a fact in pais, what was the actual value of the nominal currency in the foreign market. Grant v. Maxwell [Case No. 5,699]; Loewenstein v. Maxwell [Id. 8,-462]. In the last case, oral evidence of the fact of depreciation was given and received without-question by the government as to its admissibility or sufficiency, and the jury found the value of the currency upon that testimony. In the first case, the depreciation was proved both by the production of a consular certificate and by evidence in pais. No evidence other than oral was given in the present case, and it was taken subject to the objection of the defendant as to its competency and effect.

The principle adjudged in the two cases above referred to is, that the act of May 22, 1846 (9 Stat. 14), does not rescind the proviso to the 61st section of the act of March 2, 1799 (1 Stat. 673), so as to permanently fix the value of the Austrian florin in respect to purchases and invoices made in that money on importations from Austria to the United States, but that subsequent adulterations or depreciations of the currency may be proved according to the provisions of the act of 1799. In case the government of that empire legitimates a base currency in florins at a value equal to that of specie florins, the importer will be protected, by force of the act of 1799, from losses so arising, and will be entitled to enter his goods on payment of duties upon the specie value of the importation. That construction of the law is in effect adopted at the treasury, and, by a circular issued September 19th, 1851, will govern future importations.

That doctrine is not called in question in this case, but the point is now raised for the first time, that the merchant cannot have the advantage of the principle without proving the deterioration of the invoice currency in the manner required by the treasury instructions founded upon the authority conferred by the proviso to the 61st section of the act of 1799. There can be no doubt of the legal principle that, if a mode of proof is prescribed by the terms of the law, or by its fair interpretation, no other than the statutory evidence can be admitted.

It appears to me, that the cases adverted to, and this suit itself, rest upon a principle which, in effect, disposes of the question now presented. The right to maintain this action springs out of the provisions of the proviso referred to, as interpreted by this court, in connection with the act of 1846. If the latter act works a repeal of the proviso, in respect to the currency of Austria, the plaintiffs have no footing upon which to base their action. In bringing forward that proviso as the authority for their demand, they must necessarily take it subject to all its legal qualifications and conditions. A cardinal one is a power in the president to establish regulations to meet the case of invoices exhibited in a depreciated currency, for the purpose of equalizing ad valorem duties. Its terms are, "that it shall be lawful for the president of the United States to cause to be established fit and proper regulations for estimating the duties on goods, wares and merchandise imported into the United States, in respect to which the original cost shall be exhibited in a depreciated currency issued and circulated under the authority of any foreign government." The acts of the treasury department, to which matters affecting the revenue appropriately belong, are, in law, the acts of the president (Wilcox v. Jackson, 13 Pet. [38 U. S.] 498), and, accordingly, the instructions given by the secretary of the treasury, either by general circulars to collectors, or by specific directions in a particular case, are to be regarded by the court as regulations in that behalf established by the president. A part of the circular of August 20th, 1845, is directly applicable to this subject, and is as follows: "Invoices of ad valorem, specific or free goods, when made out in a foreign depreciated currency, or a currency the value of which is not fixed by the laws of the United States, must, in each case, be accompanied by a consular certificate, showing the value of such currency in Spanish or United States silver dollars."

The decisions before cited regard a foreign currency debased by legislative authority since the act of 1846, as being "a currency the value of which is not fixed by the laws of the United States," and hold that, accordingly, the importer can have relief against its effect upon his invoices, under the treasury instructions founded upon the 61st section of the act of 1799. It follows, as a necessary consequence of that doctrine, that, in order to obtain the relief, he must present his claim under the sanction prescribed by the instructions, and must accompany each case by a consular certificate. A collector has no power to dispense with this requirement, or, by a course of practice or construction, to enable importers to draw from the treasury, upon other and inferior evidence, duties paid in upon a wrong valuation of importations, the same as if a consular certificate had accompanied the invoice and been presented to prove the debasement of the invoice currency: That document is the statutory evidence and authority upon which the invoice may be rectified; and it cannot legally be corrected without either exacting the presentation of the certificate with the invoice, or taking a bond to produce it. This bond, of necessity, becomes estreated to the government if the certificate is not forthcoming according to its condition; and the direction of the president that a bond must be given to produce the certificate, is full notice that the certificate is a prerequisite to any relief in this respect.

The entry, in this case, was made without the offer of a consular certificate, or any demand of one by the collector, or of a bond for its production, and the protest against the exaction of duties on the invoice value makes no mention of the existence of such a certificate.

Upon these facts, I am of opinion that the plaintiffs have not, by legal and sufficient evidence, substantiated a right of action against the defendant, and that judgment must be entered for him.