UNITED STATES v. DOMINICI et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1897.)

CUSTOMS DUTIES—REIMPORTATIONS—IDENTIFICATION—TREASURY REGULATIONS—BOXES AND "SHOOKS."

The circular letter of the secretary of the treasury of October 20, 1890, continuing in force articles 381–383 of the treasury regulations of 1884, prescribed the regulations under which proof should be made of the identity of American articles reimported, under paragraph 493 of the tariff act of 1890. Such regulations apply to boxes imported filled with fruit, which have been exported from the United States in the form of shooks, and proof of the identity of such boxes with the shooks exported, furnished in any other form than that prescribed by such regulations, will not entitle the boxes to free entry. 72 Fed. 46, reversed.

This is an appeal from a decision of the circuit court (72 Fed. 46), Southern district of New York, reversing a decision of the board of general appraisers, which had affirmed a decision of the collector of the port of New York, assessing duty on certain boxes containing

oranges and lemons, and imported into this country while the tariff act of 1890 was in force, the assessment being made under paragraph 301 of that act, which imposes "a duty of 30 per cent. ad valorem upon the boxes or barrels containing said oranges, lemons or limes." There is no question that, if the boxes are made of shooks not of American manufacture, the rate of duty is correct; but it is contended that these boxes are entitled to free entry.

Max J. Kohler, Asst. U. S. Atty.

C. B. Smith, for appellees.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Paragraph 493 of the act of October 1, 1890, which is included in the free list, and upon which the importers rely, reads as follows:

"Articles, the growth, product and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; casks, barrels, carboys, bags and other vessels of American manufacture exported filled with American products, or exported empty and returned filled with foreign products, including shooks when returned as barrels or boxes; * * * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the secretary of the treasury; and if such articles are subject to internal tax at the time of exportation, such tax shall be proved to have been paid before exportation and not refunded."

A shook is defined in Webster's Dictionary as: "(a) A set of staves sufficient in number for one hogshead, cask, barrel, and the like, trimmed and ready to be put together; (b) a set of boards for a sugar box." It is not disputed that the word, as used in the statute, covers a set of boards for a box for lemons or oranges. The board of general appraisers found that some of the shooks reported by the appraiser to be of American production or manufacture were such in fact, and that the other articles not so reported were of foreign manufacture and production. It further found that the importers had failed to furnish any proof of the identity of any of the articles in question with those originally exported, as required by the regulations of the secretary of the treasury made pursuant to law; wherefore the board found the issue of identity against the importers in each case, and sustained the decision of the collector.

The importers contend that no regulation of the secretary of the treasury applicable to proof of identity of shooks has been prescribed; and that, even if one had been prescribed, compliance with it is not necessary to entitle to free entry. The judge who heard the cause in the circuit court, and decided it orally upon the trial, seems to have felt constrained by an earlier decision of the same court to the conclusion that no regulation applicable to shooks had been prescribed. It is thought that the record presented here is more complete than it could have been in the earlier case. Certainly it leads us to an opposite conclusion. The provisions of paragraph 493 of the act of 1890, quoted above, are a reproduction in the same terms of paragraph 649 of the tariff act of 1883; and by

a circular letter of the secretary of the treasury, issued promptly (October 20, 1890) after the passage of the new act, certain articles of the treasury regulations of 1884 touching proofs of identity were continued in full force and effect. The pertinent paragraphs of the regulations are as follows:

"Art. 381. Other barrels, casks, carboys, bags and vessels of American manufacture, on which no drawback has been allowed, exported filled with American products, or exported empty and returned filled with foreign products, including shook when returned as barrels, or boxes, and bags other than of American manufacture, in which grain shall have been actually exported from the United States, returned empty, are entitled to admission free of duties; but proof of the identity of such articles must be made, and if any of them were subject to internal tax at the time of exportation, such tax shall be proved to have been paid before exportation and not refunded. Rev. St. § 2503; Act. Feb. 8, 1875 (18 Stat. 307); §§ 2839, 4260, 4572, 4594, 4760; Circulars, October 25, 1879, and February 17, 1875.

"Art. 382. Before such entry the following proofs shall be required by the collector of customs:

"First. A certificate from the shipper, executed in triplicate (and attested by a consul or consular agent of the United States) in the following form:

" 'Foreign Certificate Relating to Bags or Other Vessels Re-imported.

" 'I hereby certify under oath, that, to the best of my knowledge and belief, the *—— hereinafter specified, are truly of the manufacture of the United States, †—— or were exported from the United States filled with *—— and that it is intended to reship the same to the port of ——, in the United States, ‡—— on board the ——, now lying in the port of ——. I further certify that, to the best of my knowledge and belief, the actual market value of the things herein named, at this time and in the form in which the same are to be exported to the United States, is as follows: §                              —— ——.

" 'Sworn to before me this —— day of ——, 18—.'

"*Name the articles.

"† If the packages are empty, insert statement of the facts as 'and were exported from the United States filled with the produce of that country.'

"‡ If the packages contain foreign merchandise, insert 'filled with' and a description of the merchandise they contain.

"§ This blank is to be filled only when the merchandise contained in the package, is subject to a duty ad valorem.

"The consul will be required to verify the facts alleged in this certificate, so far as practicable, and to furnish information to the proper officers of the customs in case its correctness may be questioned.

"If it is impracticable to obtain the consular attestation, the department will consider that of some other proper officer having a seal and authorized to take affidavits, on special application, made by the parties concerned, through the proper collector of customs.

"Such certificate may be accepted in lieu of an invoice for empty articles. But if the articles are filled with foreign merchandise, their value must be separately stated in the invoice, and the certificate be attached to or made a part of the invoice. If the certificate cannot be produced at the time of the entry, bond may be taken therefor in a penalty equal to twice the duties, to run for six months.

"Second. A declaration in the entry by the importer of the name of the exporting vessel, the date of the shipper's outward manifest, and the marks and numbers on the articles for which entry is sought. The marks and numbers should be such as to prove beyond any reasonable doubt, the identity of the articles with those entered on the outward manifest. If the articles are not marked with the name of the firm to which they belong, and with consecutive numbers, the name of the firm alone, or of its private initial letter or letters, may be accepted in the discretion of the collector. If they are returned to any port other than that from which they were exported, a copy of that portion of the outward manifest relating to the articles, certified by the collector of customs at the port whence they were exported, must be produced as well as a certificate from the same officer, countersigned by the naval officer, if any, that he is satisfied no drawback or bounty has been paid thereon.

"Third. An affidavit by the importer (which affidavit must be attached to the entry) that no drawback or bounty has been allowed on the exportation of the articles for which free entry is claimed, and also that the articles mentioned in the entry are, to the best of his knowledge and belief, truly and bona fide manufactures of the United States, or were bags exported therefrom filled with grain."

"Fifth. Verification by actual examination by the proper officer of the appraiser's department with an endorsement of the fact of examination, and also of the fact whether in his opinion the articles are of domestic or foreign manufacture, as the case may be.

"On the production of the above proofs the articles may be admitted to free entry, if the collector shall be satisfied that they are entitled to such entry, under the laws cited in the preceding articles, and that no drawback or bounty has been allowed thereon.

"No evidence of declaration at the time of exportation of intent to return the articles empty will be required.

"Art. 383. Such bags and vessels exported to be returned should, when practicable, be marked or numbered, in order that they may be identified on their return; and the marks or numbers should appear on the manifest upon which they are exported. Section 3314."

The reasonableness and propriety of these regulations is not questioned; indeed, it is difficult to see on what ground it could be claimed that they were unreasonable, or contradictory of the provisions of the statute. The contention of the importers is that they are inapplicable to shooks which when exported do not leave this country filled with anything, and in a strictly technical sense do not leave here empty, since they do not leave as barrels or boxes. This is hypercriticism. With equal literalness it might be said that the barrels or boxes returned did leave here "empty," since the shooks of which they are composed did not at that time inclose anything, but were themselves packed in bundles. But this is not so much a question of juggling with words as it is of practical common sense. Article 381 calls attention to the fact that besides the other barrels, carboys, bags, etc., of American manufacture, "shooks, when returned as barrels or boxes," are free, but proof of identity must be made, and article 382 begins with a statement that before "such" entry—i. e. of any of the articles enumerated in the preceding article—the "following proof shall be required by the collector." Next comes a form of consular certificate relating to "bags and other vessels, reimported." Certainly the word "vessel" is broad enough to cover boxes or barrels. This certificate is manifestly elastic, for it contains blanks to be filled appropriately to the facts. Because in the annotations indicated by the asterisks and dagger, suggestions are made as to the form of words to be used when the articles were exported from the United States filled with something, it by no means follows, as the appellee contends, that the regulation requires that the blank spaces shall be filled "no otherwise." The statute accords free entry to barrels, carboys, etc., which are exported empty, and returned filled with foreign products. All that is necessary to make the certificate cover such articles is to strike out the conjunction "or" and the words "filled with," and write the word "empty" in the third blank space. Or, if we are to stick in the bark of a strictly literal interpretation, we need not even strike out the words "filled with"; it will be sufficient to write into the blank space the word "nothing." It is a curious com-

mentary on the effects of excessive literalism that appellee's counsel, who has evidently analyzed article 382 most carefully, has fallen into the error of supposing that the note prefixed with the double dagger refers to the contents of the vessels when exported from this country, whereas in fact it refers to the contents of the vessels when they leave the foreign port on their way back to the United States. It is difficult to conceive how an intelligent person could find any difficulty about filling up the blank certificate so as to retain all its essential requirements and make it apply to a lot of boxes made of American shooks. Certainly the shipper of the articles which are the subject of this appeal found no such difficulty. To some of the shipments there is found attached a consular certificate duly executed, as follows:

"I, Ferdinando Ferro, duly-authorized agent of Marino, of Palermo, do hereby certify under oath that to the best of my knowledge and belief the 1,172 boxes or barrels mentioned in the annexed invoice are made of shooks of the manufacture of the United States, and were exported from Bangor by Andrea Lovice, per Andrea Lovice, on the 9th September, 1890, and that it is intended to reship the same, filled with fruits, to the port of New York, in the United States, on board the steamship Caledonia, lying in the port of Palermo. I further certify that the actual market value of said fruit, boxes, or barrels is as stated in the annexed invoice."

This carefully conforms to the requirements of the regulations touching the consular certificate.

It is not disputed that upon the record before this court it appears that the proof of identity required by the treasury regulations was not furnished, but the importers insist that the furnishing of such proof is not a prerequisite of free entry if they can show to the court in some other way that their shooks are in fact of American manufacture. We are unable to assent to any such proposition. Congress expressly laid a duty upon boxes or barrels containing oranges or lemons. In withdrawing any particular kind of boxes from the obligation to pay that duty it could couple the privilege of free entry with any restrictions it chose. By the paragraph (493) of the act above quoted it has coupled that privilege with the requirement that proof of identity shall be made under general regulations to be prescribed by the secretary of the treasury. The case is very different from those cited on the appellee's brief, where the regulations under consideration had been made under the general power of the secretary as head of the treasury department to regulate the administrative details of customhouse business. There has been no attempt to defeat the provisions of the statute by an arbitrary refusal to prescribe any regulations at all, nor by the prescribing regulations which it is impossible to comply with. The rights secured to the importer by the statute are in no wise modified or interfered with or injuriously affected by the regulations, which are nowhere suggested to be contradictory of the statute, or unjust, unfair, or even unreasonable. "When a mode of proof is prescribed by the terms of the law, or by its fair interpretation, no other than the statutory evidence can be admitted." Dutilh v. Maxwell, 2 Blatchf. 541, Fed. Cas. No. 4,207. Here congress has expressly provided for one mode of proof, and for one

only, in the very same sentence in which it provides for free entry, and it is difficult to understand on what theory it could be held that this express provision as to proof is not of the essence of the exemption from duty which that sentence accords to the importer who may bring his importations within its terms. See, also, Gauthier v. Bell, 10 Fed. Cas. 103.

Inasmuch as it is conceded that proof of identity was not made under the regulations which the statute called for, the decision of the circuit court is reversed.