UNITED STATES *v.* RICARD-BREWSTER OIL Co. (No. 4366)[1]

---

[1] C. A. D. 191.

United States Court of Customs and Patent Appeals, January 5, 1942

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Daniel I. Auster*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins*, of counsel) for appellee.

[Oral argument December 4. 1941, by Mr. Lawrence and Mr. J. Stuart Tompkins]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States Customs Court, First Division, one judge dissenting, reversed the action of the Collector of Customs at the port of Philadelphia in refusing to allow drawback on the export of 20 drums of neat's-foot oil which was partly manufactured from imported duty-paid material. Appellant has appealed here from the judgment of the trial court.

The case was submitted to the trial court on the following stipulated statement of facts:

Paragraph one—the notice of intent number 3908 to export the merchandise in question, 20 drums of neatsfoot oil with benefit of draw-back pertaining to draw-back entry number 449 (which paper we ask to have marked "Exhibit 1"), was filed with the Philadelphia Collector of Customs at 9:27 a. m. October 22, 1937.

Paragraph two—said merchandise was weighed on the morning of October 22, 1937, by and under supervision of the customs inspector as shown by the paper herewith submitted which we ask be marked "Exhibit 2," but the weighing was not made pursuant to notice of intent aforesaid but on general instruction contained in article 1053 of the Customs Regulations of 1937, as a precautionary measure in anticipation of draw-back as is shown by letter dated March 16, 1938, which we ask be received as Exhibit number 3.

Paragraph three—thereafter, at noon of October 22, 1937, this merchandise was laden on the steamship *Collamer*, but not under customs supervision. The lading as of October 22, 1937, is shown by a certified copy of the ocean bill of lading which we ask be marked "Exhibit 4."

Paragraph four—during the morning of October 22, 1937, the customs inspector in charge of pier 98, was present on that pier. Said inspector did not receive from the collector's office the notice of intent number 3908 until 3:15 p. m. October 22, 1937.

Paragraph five—the steamship *Collamer* sailed or cleared from the port of Philadelphia on October 23, 1937.

Paragraph six—The merchandise in question, 20 drums of neatsfoot oil, was manufactured partly out of imported duty-paid material, and all regulations of the Secretary of the Treasury with reference to draw-back, with the possible exception of timeliness of notice of intent which is being contested in this suit, were duly complied with, draw-back being denied solely because of what the Collector claimed was lack of timely notice of intent.

The record contains certain testimony which, in all material respects, was cumulative of the above stipulation. It appears from the stipulated facts and from documentary exhibits in the case that the sole ground of refusal on the part of the collector to allow the drawback claim was based upon the untimeliness of the notice of intent to export the merchandise in question. The facts are not in dispute.

The shipper, Ricard-Brewster Oil Co. of Wilmington, Del., exported the oil, made in part from duty-paid imported material, to Havre, France, and on October 22 delivered the oil, in drums, by truck to the steamship *Collamer* at the port of Philadelphia, where on that date the receiving clerk of the steamship company, one Charles A. DeBey, signed the bill of lading at about 10 o'clock a. m. The said bill of lading contains a lead-pencil notation "Have this shipment weighed." DeBey testified that he ordered the truckman to take it to the customs scales and have it weighed. The merchandise was weighed under the supervision of the customs inspector on the morning of October 22. The weighing was not made pursuant to a notice of intent provided for under article 1044, Customs Regulations of 1937, but was made in compliance with general instructions contained in article 1053 of said regulations as a precautionary measure, in anticipation of drawback. At noon on October 22, 1937, the merchandise was laden (not under customs supervision) on the steamship *Collamer* which sailed on October 23, 1937, at about 9:30 p. m. It is stipulated that during the morning of October 22, the customs inspector in charge of the pier was present on the pier but that he did not receive from the collector's office a notice of intent which had been there filed at 9:27 a. m., October 22. The inspector received a copy of the notice of intent at 3:15 p. m. of the same day.

There is no evidence except that stated hereinbefore that throws any light on the question as to who made the notation on the bill of lading "Have this shipment weighed." In view of our conclusion this fact is immaterial.

The pertinent provisions of the statute and the customs regulations applicable to the instant case follow:

Tariff Act of 1930

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties * * *.

*　　*　　*　　*　　*　　*　　*

(i) REGULATIONS.—The Secretary of the Treasury is authorized to prescribe regulations governing (1) the identification of imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties,

the ascertainment of the quantity of such merchandise used, of the time when such merchandise was received by the manufacturer or producer of the exported articles, and of the amount of duties paid thereon, the determination of the facts of the manufacture or production of such articles in the United States and their exportation therefrom, the time within which drawback entries on such articles shall be filed and completed, to entitle such articles to drawback, and the payment of drawback due thereon; * * *

### Customs Regulations of 1937

Art. 1044. Notice of intent to export—Local or direct exportation from a seaboard or frontier port.—(a) At least 6 hours, but not more than 90 days, before the lading of the merchandise to be exported, the claimant for drawback, or his duly authorized agent, shall file with the collector of customs at the port of exportation a notice of intent to export on customs Form 7511. A duplicate copy of the notice of intent shall be delivered to the customs officer in charge at the place of lading at the time the goods are delivered to the exporting vessel or conveyance. Such notices of intent shall give the name of the exporting vessel, or in the case of a vehicle the name of the carrier, and place of lading, describe the merchandise by marks and numbers and state in detail the kind and contents of the packages, the quantity, weight (gross and net), gauge, or measure.

The majority of the trial court held that the notation "Have this shipment weighed" written on the bill of lading was—

a form of notice, irregular and perhaps technically defective, but notice to the customs inspector sufficient for him to take the precaution to weigh the shipment just as he would have done had he had a formal notice of intent, and it was sufficient to have led him to the precaution of inspecting the merchandise or at least to have deferred the lading until receipt of the formal notice of intent.

The court further said:

It is an elementary principle of law that requirements for notice before a certain time are solely for the purpose of seeing to it that the party who must act on the notice knows the fact in time. If such a party knows the fact from other sources that satisfies the fact of notice, and the lateness in filing the formal notice does not in such cases produce a default.

No authorities were cited by the majority on the question of notice. The principle of law relied upon below to the effect that actual notice or the opportunity to have the same may be accepted as satisfying a statutory requirement of service of notice, under certain circumstances, does not apply in this kind of case.

For supporting authority for its conclusion the lower court placed reliance on the case of *Campbell* v. *United States*, 107 U. S. 407. In that case the customs officers refused to obey certain regulations and the Supreme Court discussed the intent of Congress in enacting the drawback statute. There is nothing in the *Campbell* case which may be regarded in point on the issue at bar. This fact was pointed out by this court in a case quite similar to the one at bar—*Spencer, Kellogg & Sons (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459.

This case is ruled by the principles laid down in *Spencer, Kellogg & Sons (Inc.)* v. *United States, supra,* and *Nestle's Food Co. (Inc.)* v. *United States,* 16 Ct. Cust. Appls. 451, T. D. 43199, and the pertinent authorities cited in those cases.

In *Spencer, Kellogg & Sons (Inc.)* v. *United States, supra,* an oral notice was given to the inspector at the dock prior to the time the goods were taken on board the exporting vessel. A written notice of intent was filed in the collector's office after the lading of the vessel but prior to exportation, and a copy of the notice was not given to the inspector prior to lading. In that case the goods were not laden under customs supervision but the inspector saw the goods in the hold of the vessel. Under a statute and regulation not materially different in respects with which we are here concerned to the one now under consideration we there held that the exporter was not entitled to drawback and followed a long line of decisions to the same effect. From the *Spencer, Kellogg & Sons (Inc.)* case we quote:

> Reasonable regulations of the Secretary of the Treasury made in pursuance of law, have the force and effect of law. *Penick & Ford (Ltd., Inc.)* v. *United States,* 12 Ct. Cust. Appls. 432, T. D. 40611, and cases therein cited; *Lunham* v. *United States,* 1 Ct. Cust. Appls. 220, T. D. 31258; *Stone & Co.* v. *United States,* 7 Ct. Cust. Appls. 439, T. D. 37009; *United States* v. *Bracher et al.,* 13 Ct. Cust. Appls. 432, T. D. 41344.

> The appellant does not contend that the involved regulations of the Secretary of the Treasury are unreasonable, but contends that they have been substantially complied with. *In our opinion, the regulations requiring notice of intent to export are mandatory and compliance therewith is a condition precedent to the right of the appellant to recover under the drawback provisions.* [Italics ours.] . Such regulations may not be disregarded and proof of exportation made in some other manner than that required by them. *Lunham* v. *United States, supra; Agency Canadian Car & Foundry Co.* v. *United States,* 10 Ct. Cust. Appls. 172, T. D. 38547; *Agency Canadian Car & Foundry Co.* v. *United States,* 11 Ct. Cust. Appls. 19, T. D. 38637.

> The appellant failed to file the notice of intent to export with the collector until after the merchandise had been laden. It failed to deliver a copy of such notice to the inspector.

> The law was not complied with. The conditions precedent to the right of the appellant to refund of duties as drawback were not performed.

> In the case of *Campbell* v. *United States, supra,* the Supreme Court held that, where the statute and the Treasury Regulations adopted in pursuance thereto had been complied with by an exporter of merchandise, "there resulted a contract that when exported the Government would refund, repay, pay back," the amount of duties assessed against the imported flaxseed used in the manufacture of the exported merchandise. In that case, the conditions precedent to the right of recovery had been performed. In this case, such conditions have not been performed; and in this vitally important respect, the cases are different.

In *Nestle's Food Co. (Inc.)* v. *United States, supra,* Treasury regulations required that written notice be given to the collector or to the inspector before a shipment might be diverted from the vessel named in the notice of intent to another, where drawback was claimed upon

goods for export which had been so diverted. Oral notice was given to the inspector in charge of a pier other than the one where the ship was to be loaded. Neither the inspector at the pier where the ship loading the merchandise was located nor the collector of customs received notice of the diversion. The goods were not inspected by any customs official and were placed aboard the ship without customs supervision. Upon that statement of facts, this court held that the regulation was a reasonable and proper one and that section 313 should be construed as a Governmental grant of privilege, and any doubt in construction thereof should be resolved in favor of the Government. We there said:

Legal technicalities should not be given undue consideration, but the regulations under discussion are so obviously reasonable and fair, and so necessary to a proper determination of the matters mentioned in section 313, that, as we said in the *Spencer, Kellogg* case, *supra*, compliance with them is a "condition precedent to the right of the appellant to recover under the drawback provisions. Such regulations may not be disregarded *and proof of exportation made in some other manner than that required by them.*" [Italics ours.]

The provision of the regulation with which we are here concerned is a reasonable and proper one (this fact has not been questioned). It was made under the specific authority granted in the same section which granted the privilege of drawback and was obviously made for the purpose of protecting the revenues in connection therewith. It is not a regulation of the character which is made under the general provision of a tariff act authorizing the making of regulations for the direction and guidance of customs officers in the discharge of their duties and which regulations have frequently been held to be merely directory. The regulation involved here is mandatory, has the full force and effect of law, and could not be waived. Compliance with it was a prerequisite to securing the claimed drawback herein involved. See *Lauricella et al.* v. *United States*, 4 Ct. Cust. Appls. 253, T. D. 33482 and cases therein cited.

In many cases the distinction has been pointed out between the kind of evidence required to prove certain facts under regulations made under the general power conferred by Congress on the Secretary of the Treasury in tariff acts and that which is required under regulations made under a specific authorization for making regulations which is contained in the provision which extends the privilege. In *United States* v. *Dominici et al.*, 78 Fed. 334, by the Circuit Court of Appeals for the Second Circuit, Circuit Judge Lacombe, speaking for the court, had the following to say:

It is not disputed that upon the record before this court it appears that the proof of identity required by the treasury regulations was not furnished, but the importers insist that the furnishing of such proof is not a prerequisite of free entry if they can show to the court in some other way that their shooks are in fact of American manufacture. We are unable to assent to any such proposition. Con-

gress expressly laid a duty upon boxes or barrels containing oranges or lemons. *In withdrawing any particular kind of boxes from the obligation to pay that duty it could couple the privilege of free entry with any restrictions it chose.   By the paragraph (493) of the act above quoted it has coupled that privilege with the requirement that proof of identity shall be made under general regulations to be prescribed by the secretary of the treasury.   The case is very different from those cited on the appellee's brief, where the regulations under consideration had been made under the general power of the secretary as head of the treasury department to regulate the administrative details of customhouse business.   There has been no attempt to defeat the provisions of the statute by an arbitrary refusal to prescribe any regulations at all, nor by the prescribing regulations which it is impossible to comply with.*   The rights secured to the importer by the statute are in nowise modified or interfered with or injuriously affected by the regulations, which are nowhere suggested to be contradictory of the statute, or unjust, unfair, or even unreasonable.   "When a mode of proof is prescribed by the terms of the law, or by its fair interpretation, no other than the statutory evidence can be admitted."   Dutilh v. Maxwell, 2 Blatch. 541, Fed. Cas. No. 4,207.   Here congress has expressly provided for one mode of proof, and for one only, in the very same sentence in which it provides for free entry, and it is difficult to understand on what theory it could be held that this express provision as to proof is not of the essence of the exemption from duty which that sentence accords to the importer who may bring his importations within its terms.   See, also, Gauthier v. Bell, 10 Fed. Cas. 103.   [Italics ours.]

The case of *United States* v. *Dominici et al.*, *supra*, was discussed at great length and the principles therein announced followed by this court in *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386.   The question there was whether or not a regulation, made by the Secretary of the Treasury requiring certain things to be done in order that artistic antiques should be exempted from duty, was mandatory or merely administrative.   The authorization for making the regulation was contained in the same paragraph that provided for the free entry of artistic antiques.   There the court said:

At the threshhold of the inquiry we are confronted with the question whether these regulations thus promulgated are conditions precedent to the right of free entry as accorded by this section of the law, or whether they are merely regulative of the method of introducing such importation into the body commerce of the country.   Upon that point we think the authorities are uniform and well settled.

The principle controlling such cases may be generally stated that where regulations are promulgated by the Secretary of the Treasury under the general power granted by the provisions of section 251 of the Revised Statutes to make general rules and regulations for the collection of the revenues, such are deemed and held regulative or administrative merely and not conditions precedent to the right of exemption from duty.   Compliance with such regulations may be had after the acts of importation and entry.   Compliance with such may be the subject of proof before the Board of General Appraisers [now the United States Customs Court].   Where, however, an exemption from or reduced rate of duty is claimed under a specific provision of the statutes which, as in this case, is accorded under or subject to such regulations as to proof or otherwise that may be prescribed by the Secretary of the Treasury, it has uniformly been held that such regula-

tions become a condition precedent to the right accorded by the statute and must be complied with at the time of entry, or as otherwise specifically directed by the statute granting the same. In such cases the right to an exemption from or to a reduced rate of duty is an exemption accorded in the specific instance only, and constitutes an exception from the general rule, which must, in order to be enjoyed, be subject to compliance with the condition precedent prescribed by the Secretary.

See also *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 432, T. D. 40611, and *M. Grieve & Co.* v. *United States*, T. D. 46895, 65 Treas. Dec. 228.

In the instant case, Congress, in the same section granting the privilege, authorized the Secretary to make rules and regulations to carry out its purpose and specifically outlined the scope of such regulations. Under such circumstances (under all the authorities which we have examined) a reasonable regulation must be held to be mandatory and a strict compliance therewith should be required. We therefore hold that the failure of the exporter in the instant case to give the required notice of intent to export as required by the regulation was full justification for the refusal by the collector to allow the claimed drawback, and the judgment of the United States Customs Court is *reversed*.