(C. D. 753)

SWIFT & Co. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided March 27, 1943)

*Philip Stein* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: This protest is directed against the refusal of the collector of customs at the port of Los Angeles to allow drawback under the provisions of section 313 of the Tariff Act of 1930 of the duties paid on certain imported merchandise used in the manufacture in the United States of salad oil which was subsequently exported.

None of the facts of importation, manufacture, and exportation are in dispute, the only issue being whether plaintiff complied with certain customs regulations. The record before us consists of a stipulation of facts and certain supplementary oral testimony. From these it appears that the salad oil, manufactured with the use of an imported material, was delivered in drum containers to the pier from which the exporting vessel named in the notices of intent, the S. S. *President Lincoln*, was expected to sail. The merchandise was delivered, and the notices of intent required under article 1023 of the Customs Regulations of 1931 were filed on June 17, 1936, and the *President Lincoln* was expected to sail June 20, 1936, and actually did sail on that date. However, prior to that time, for some reason which does not appear, the exporter decided not to ship the merchandise on board the *President Lincoln* and apparently issued instructions to carry out this decision to the steamship agents, but neglected to inform the customs officials as to what was intended to be done with the merchandise.

The salad oil contained in the drums lay on the pier until July 6, 1936, at which time it was laden on board the S. S. *President Hoover* and exported. The merchandise was, however, not inspected nor laden under customs supervision.

According to the stipulated facts, shortly after the sailing of the *President Lincoln* the inspector in charge at the pier returned the copy of the notice of intent which had been delivered to him to the collector's office, and apparently notified that office that the salad oil had not been inspected and laden on board the *President Lincoln*.

Drawback was disallowed by the collector for the reason that no timely written notice of the diversion of the shipment was filed either with the collector or the inspector as required by article 1029 of the

Customs Regulations of 1931, then in force and effect. This article reads as follows:

**Art. 1029. Diversion of shipments.**—(*a*) Whenever the merchandise is diverted from the vessel or conveyance or from the place of lading named in the notice of intent, to another vessel or conveyance or to another place of lading, notice in writing of the change must be given to the collector or to the inspector before lading in ample time to secure inspection.

(*b*) Notice of diversion will be waived, however, in cases where it shall appear, to the satisfaction of the Commissioner of Customs, that the shipment was diverted from the vessel named in the notice of intent to another vessel of the same line, or another vessel loading at the same pier or set of piers, without knowledge by the parties in interest, their agents or representatives, in time to file notice of diversion, provided that the merchandise was delivered at the pier in time for inspection and supervision of lading on the vessel named in the notice of intent.

It clearly appears that no timely notice of diversion as required by subdivision (*a*), above, was filed in connection with the merchandise involved. It likewise clearly appears that the conditions specified in subdivision (*b*) under which notice of diversion would be waived were not met in the case at bar. The diversion, so far as the facts show, was with knowledge by the exporter, and timely notice could have been filed.

In the brief filed in support of plaintiff's claim it is urged that in view of the fact that "the merchandise remained on the dock available to customs inspection between the sailing of both vessels, and that the merchandise was actually exported from the port of Los Angeles" the regulations were sufficiently complied with to warrant the allowance of drawback herein.

We think it is well settled by a long line of cases, among which may be cited *Spencer, Kellogg & Sons, Inc.* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459, *Nestle's Food Co., Inc.* v. *United States*, 16 id. 451, T. D. 43199, and *United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. 192, C. A. D. 191, with reference to reasonable regulations made by the Secretary of the Treasury under statutory authority in connection with the exportation of merchandise for benefit of drawback, that such regulations are mandatory and that no compliance short of actual compliance therewith can be regarded as "sufficient" upon which to base a claim for drawback. With particular reference to the case at bar we think it may be said that the fact that the merchandise remained on the dock available to customs inspection between the sailings of the vessels was open to many interpretations, and it was no part of the duty of the inspector in charge to guess at the intention of the exporter who changed his mind and departed from the intention expressed in the notice of intent originally filed.

Some suggestion is made in the brief filed on behalf of the plaintiff that article 1029, *supra*, was unreasonable and beyond the scope of the authority given the Secretary under the tariff act. Under section

313 (i) of the act the Secretary was given authority "to prescribe regulations governing (1) * * * the determination of the facts of the manufacture or production of such articles in the United States *and their exportation therefrom* * * *." [Italics ours.] We can see nothing unreasonable in a regulation which had for its purpose the ascertainment of a very vital fact in connection with exportation, viz, the name of the actual exporting vessel or conveyance, and it is obvious that such a regulation was well within the Secretary's authority.

Much is made in the plaintiff's brief of the facts that the customs inspector in charge at the pier to which the goods in question were delivered failed to inspect the goods as required by article 1030 (a) of the Customs Regulations of 1931, although the notice was received by him in time to have done so prior to the sailing of the *President Lincoln*, and that shortly after that vessel sailed he returned his copy of the notice of intent to the collector, and article 1030 (d) is cited for the proposition that he should have retained the notice for 90 days from the date of receipt thereof.

These provisions of the regulations read as follows:

Art. 1030. Inspection and supervision of lading.—(a) Upon receipt by the inspecting officer of the copy of the notice of intent accompanying the goods, or of the copy transmitted by the collector, he shall proceed to identify the packages and shall supervise the lading thereof on board the exporting vessel or conveyance.

* * * * * * *

(d) When no portion of the merchandise covered by a notice of intent to export is laden within 90 days from the date of receipt of such notice by the inspector, he shall return the notice to the collector with a report of all the facts relative thereto. If the lading is begun within 90 days and is in progress at the expiration of that period, the notice shall be retained by the inspector until the lading has been completed, provided such lading is not discontinued.

While it appears to be true that the inspector did not inspect the goods as required by article 1030 (a), we do not see how this fact can inure to the benefit of the claimant for drawback herein. Two duties were laid upon the inspector by that regulation—the duty to inspect, or identify the packages, and the duty to supervise the lading. It is entirely probable that the inspector intended to inspect the goods and supervise the lading at the one time, but whatever the reason for his failure to inspect, his failure to supervise the lading was due only to one cause—failure on the part of the plaintiff properly to notify him or the collector of the diversion.

We do not think that the inspector's action in returning the copy of the notice of intent shortly after the *President Lincoln* sailed operated in any way to the detriment of the plaintiff. The plain fact is that he did not receive notice of intention to export the goods on the *President Hoover*, and that fact would in no way be altered had he retained his copy of the original notice of intent to export on

the *President Lincoln*. The fact, stressed in plaintiff's brief, that the goods remained in customs custody from the time of original delivery until it was exported, likewise does not affect the issue, which simply is whether or not the regulation requiring notice of diversion was complied with, or whether the conditions under which it would be waived were met.

On the facts shown we are without power to afford any relief to the plaintiff, and judgment will therefore issue overruling the protest in all respects.