(C.D. 3948)

Swan Tricot Mills Corporation *v.* United States

United States Customs Court, First Division

(Decided December 30, 1969)

*Robert N. Altman* for the plaintiff.

*William D. Ruckelshaus, Assistant Attorney General (Andrew P. Vance* and *Patrick D. Gill,* trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This protest is directed against the refusal of the district director of customs at San Juan, Puerto Rico, to allow— pursuant to section 313(c) of the Tariff Act of 1930, as amended—a refund of duty as drawback on imported yarn allegedly not conforming to sample. The refund was disallowed because of the importer's non-compliance with the requirements for drawback imposed by statute and regulations. Plaintiff concedes that it did not strictly comply with such requirements but claims it has substantially complied and, therefore, its claim for drawback should be allowed. Defendant, on the other hand, maintains that plaintiff has not substantially complied with the requirements. It argues further that even if plaintiff had substantially complied, it should not be awarded drawback because nothing less than strict compliance is sufficient.

The following are the pertinent portions of the statutes and regulations involved:

The Tariff Act of 1930:

*Section 313(c)—Merchandise not conforming to sample or specifications.*

(c) Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

\*       \*       \*       \*       \*       \*       \*

*Section 313(i)—Regulations*

(i) Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe * * *.

Customs Regulations (19 CFR §§ 22.31–22.33) :

REJECTED MERCHANDISE

§ 22.31 *Drawback allowance.*

Upon the exportation of imported merchandise not conforming to sample or specifications or shipped without the consent of the consignee, the duties paid thereon, less 1 percent, shall be refunded as drawback in accordance with the provisions of section 313(c), Tariff Act of 1930, as amended, subject to compliance with the regulations in §§ 22.32 to 22.35.

§ 22.32 *Drawback entry.*

(a) An importer of merchandise claimed not to conform to sample or specifications * * * who desires to export such merchandise with benefit of drawback, shall file with the collector of customs at the port where the merchandise was entered or at any other port a drawback entry in duplicate on customs Form 7539, stating the quantity and description of the merchandise and identifying it with the import entry. The drawback entry shall also specify the place where the merchandise is to be deposited in customs custody. * * *

(b) Each drawback entry covering merchandise not conforming to sample or specifications * * * shall be executed in the name of the importer of record * * *. If the goods are claimed to be not in accordance with sample or specifications, the drawback entry shall be accompanied by a copy of the order for the merchandise, copies of any preliminary correspondence, and the samples or specifications on which the merchandise was ordered, together with a certificate of the actual owner that the sample or specifications submitted are those on which the merchandise was ordered, showing in detail in what manner the merchandise does not conform to sample or specifications. * * *

§ 22.33 *Return of merchandise to customs custody.*

(a) Upon receipt of the drawback entry, the collector shall assign a number thereto, by appropriate notation on all copies, approve the place of deposit of the merchandise specified by the person making the entry or designate another place if that one is not deemed suitable, and return the original to the entrant for presentation with the merchandise to the customs officer at the place of deposit. The merchandise shall be delivered into customs custody at such place within 90 days after the date on which it was originally released from customs custody unless, either before or after the return of the merchandise, a longer time is specially authorized by the Bureau, or by the collector under the authority of this paragraph. The collector, upon written application, may extend the period in those cases where he is satisfied that the importer has been or will be prevented by circumstances beyond his control from returning the merchandise within the 90-day period, and that the importer proposes to return, or has returned, the mer-

chandise within a reasonable time. * * * If the report of the receiving officer shows that the merchandise was not returned to customs custody within the time required by law, the drawback shall be denied.

The essential facts are these: On March 29, 1963, 891 cartons of yarn filaments of "rayon or other synthetic textile" wound on a total of 14,259 bobbins were imported from Germany into Puerto Rico by plaintiff under entry 14177. A Temporary Importation Bond Entry was issued for the 14,259 bobbins inasmuch as the bobbins were to be used for holding the yarn during transportation and were not to be sold in the United States but rather were to be returned to Germany.[1] Some two years later, on March 26, 1965, plaintiff exported 636 of the 891 cartons of yarn filaments together with the 14,259 bobbins. In connection with that exportation, a customs inspector certified on customs Form 3495 (Application for Exportation of Articles under Special Bond) that he had supervised the transfer and lading of "636 CTNS (14,259 pieces)" which, according to the customs Form, had been entered under the Temporary Importation Bond Entry. Such supervision, the record shows, consisted of verifying the number of packages and checking the labels, marks and numbers. The customs inspector did not, however, open the cartons and inspect for drawback purposes; in fact, he never performed an inspection for drawback purposes.

On November 22, 1965, *after* the yarn on the bobbins had been exported back to Germany, plaintiff filed customs Form 7539—an Application for Exportation and Drawback Entry Covering Rejected Merchandise—with the district director of customs at San Juan, Puerto Rico. In that application, plaintiff claimed that the cartons of yarn exported back to Germany did not conform to sample or specifications and that it was therefore entitled to a drawback refund. The district director decided that the drawback should not be allowed because the merchandise was not returned to customs custody for customs examination prior to exportation of the drawback merchandise.

Against this background, it is to be noted that in several particulars plaintiff did not comply with specified statutory and regulation requirements. First, it did not, as required by section 313(c) of the act, return the allegedly non-conforming merchandise to customs custody within 90 days after it had originally been released from customs custody. See also §§ 22.32 and 22.33 of the regulations. Nor did it seek an extension of time within which to return such merchandise to

---

[1] Merchandise imported under a Temporary Importation Bond Entry is not assessed duty. See section 308(7) of the Tariff Act of 1930, as amended.

customs custody. Second, plaintiff failed to file a customs Form 7539 *before* exportation, as required by §§ 22.32(a) and (b) of the regulations. Third, plaintiff failed, as required by § 22.32(b) of the regulations, to supply "a certificate of the actual owner that the sample or specifications submitted are those on which the merchandise was ordered, showing in detail in what manner the merchandise does not conform to sample or specifications." We hold that such lack of compliance with applicable provisions of law and regulations debars plaintiff from obtaining the claimed drawback.

Plaintiff, however, insists that the examination by the customs inspector at the pier in connection with the exportation of the articles under the special bond (referred to previously) was enough to satisfy the requirements in the drawback regulations for the return of merchandise to customs custody. Plaintiff's position is that the requirements for exportation applicable to temporary importations under bond (Customs Regulations §§ 10.38 and 10.39) are "more stringent" than those required by the drawback provisions and, therefore, an examination that satisfies the requirements for exportation of articles under special bond necessarily satisfies the drawback statutes. We do not agree. For one thing, the yarn here involved was never returned to customs custody for a *drawback* examination to determine whether or not it conformed to sample or specifications. In this connection it is important to observe that the customs examination for drawback purposes is quite different from the examination to satisfy a temporary importation bond. In the examination for drawback purposes, it is essential to determine whether or not the merchandise conformed to sample or specifications. By contrast, in the examination to satisfy a temporary importation bond, it is only necessary to determine what merchandise was laden aboard the vessel for export; hence, there is no need to determine whether the merchandise conformed to sample or specifications. This is illustrated by what occurred in the present case where the customs inspector who inspected the merchandise to ascertain whether the temporary importation bond was satisfied made no effort to determine whether or not such merchandise conformed to sample or specifications. Nor was he supposed to, since his task was to determine what merchandise was exported.

Moreover, even if it were to be assumed that plaintiff had satisfied the requirements in the drawback regulations for the return of merchandise to customs custody, its failure to comply with other provisions of the drawback regulations would still preclude its claim. For it is an established principle that full compliance with the provisions of the statute and the customs regulations is essential to the allowance

of refunds in drawback. As pointed out in *Swift & Co.* v. *United States*, 10 Cust. Ct. 198, 200, C.D. 753 (1943) :

> We think it is well settled by a long line of cases, among which may be cited *Spencer, Kellogg & Sons, Inc.* v. *United States*, 13 Ct. Cust. Appls. 612, T.D. 41459, *Nestle's Food Co., Inc.* v. *United States*, 16 id. 451, T.D. 43199, and *United States* v. *Ricard-Brewster Oil Co.*, 29 C.C.P.A. 192, C.A.D., 191, with reference to reasonable regulations made by the Secretary of the Treasury under statutory authority in connection with the exportation of merchandise for benefit of drawback, that such regulations are mandatory and that *no compliance short of actual compliance therewith can be regarded as "sufficient" upon which to base a claim for drawback.* * * * [Emphasis added.]

In the more recent case of *Carl Matusek Shipping Co., Inc., et al.* v. *United States*, 51 Cust. Ct. 8, C.D. 2406 (1963), the factual situation was somewhat similar to the one presented here in that the plaintiff therein did not comply with the provisions of section 313(c) or §§ 22.31–22.33 of the regulations. Plaintiff asked for relief "in equity and in good conscience." The court, after pointing out that this court has no equitable jurisdiction, found that compliance with the provisions of the statute and the regulations is essential to the allowance of refunds in drawback. *Id.* at 12. In *Romar Trading Co., Inc.* v. *United States*, 27 Cust. Ct. 34, C.D. 1344 (1951), the question of substantial compliance was likewise before the court. The set of circumstances in that case were such that the plaintiff was unable to comply with the three-year limitation on the return of goods under drawback (section 313(h)) because of wartime controls which prevented it from obtaining an export license within the required period of time. Despite the fact that the circumstances were beyond the protestant's control, the court disallowed the drawback, stating (27 Cust. Ct. at 37) :

> The drawback provisions of the tariff act confer upon persons who wish to comply with them a privilege—not a right. *Swan and Finch Company* v. *United States*, 190 U.S. 143, 146; *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T.D. 43199. The right to recover drawback, i.e., receive payment, arises only when all of the provisions of the statute and the applicable and lawful regulations prescribed under its authority have been complied with. * * *

A further bar to plaintiff's claim is its failure to prove in what particulars the imported yarn failed to conform to sample or specifications. It is true that one witness, an accountant for plaintiff, testified that the goods were defective. But no particulars were presented and, in fact, we were not even told what the specifications were.

The protest is overruled. Judgment will be entered to that effect.