(C.D. 4154)

Garrett-Hewitt International Air-Sea Forwarders, Inc. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 23, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.
*L. Patrick Gray, III*, Assistant Attorney General (*Brian S. Goldstein* and *Andrew P. Vance*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

RICHARDSON, Judge: The merchandise of this protest consists of 400,000 eyeliner brushes imported at Los Angeles, Calif., from Japan in November and December, 1966, and January, 1967. Plaintiffs protest the disallowance of drawback on the five entries covered by the instant protest, claiming that all requirements of 19 U.S.C.A., section 1313(c) (section 313(c), Tariff Act of 1930, as amended) and customs regulations issued pursuant thereto were fulfilled. Subsection (c) of section 1313 authorizes drawback allowances on duty-paid imported merchandise subsequently exported because the merchandise does not conform to sample or specifications or because it was shipped without the consent of the consignee.

At the trial plaintiffs called seven witnesses, five of whom had some connection in the case either with handling the outgoing merchandise, or with outgoing documentation concerning the merchandise, or with the making of drawback entries covering said merchandise, following rejection of the merchandise by the consignee. The testimony of these five witnesses and supporting documentation received in evidence as plaintiffs' exhibits 1 through 7 establish that the 400,000 eyeliner brushes were rejected by the consignee, Spatz Laboratories, upon importation when it appeared upon inspection that they were incapable of being used to apply finely drawn lines around the eyes, and that they were repacked in six cartons which were shipped out of the Spatz plant and transported by truck to the Los Angeles International Airport office of plaintiff Air-Sea Forwarders, Inc. from which place they were subsequently laden aboard an airplane operated by the Japan Air Lines after a customs inspector "signed off" the lading copies, and were flown back to Japan on February 25, 1967—within 90 days after being released from customs custody.

The remaining two witnesses, both in the employ of the United States customs service, testified in connection with the drawback entries which had been made and filed in connection with the exportation of said merchandise. Arthur C. Mitz, senior import specialist at the Los Angeles International Airport, after examining the involved drawback entires at the request of plaintiffs' counsel, testified (R. 76) :

> BY MR. WHITE:
> Q. Mr. Mitz, these papers indicate, do they not, that you were instructed by E. Bernard, Deputy Collector, to inspect the merchandise covered by the drawback entry?—A. Yes; to examine the merchandise, yes.
> Q. Did you do so?—A. No, sir.
> Q. Would you tell us why not?—A. The merchandise wasn't available for examination.
> Q. In what respect was it not available?—A. It wasn't. As a rule, it is deposited at a certain area, and the importer or broker calls me up, and I go out and look at it. I was informed that the merchandise was not there; that it was put on a plane, or something—ready to go out—laden on a plane, and it wasn't available for examination. So I couldn't examine it.

Examination of each of the involved drawback entries on customs form 7539 discloses the following notation on the reverse side under the heading APPRAISER'S REPORT:

> DEC 18 1967
> No examination made. Merchandise was exported before presentation to examining officer.
>
> A C Mitz
> Snr. Import Specialist

Immediately above the heading APPRAISER'S REPORT on each of the involved drawback entries appears an ORDER FOR EXAMINATION of the merchandise described on the face side of the drawback entry under date of February 17, 1967, or February 21, 1967, signed by E. Bernard as Deputy Collector and directed to the United States Appraiser, which are the same dates as appear on the Order for Examination. Also, immediately above the heading ORDER FOR EXAMINATION on the subject drawback entries provision is made for REPORT[s] OF RECEIVING OFFICER, which in these cases, have not been executed. It would appear, therefore, that the Order for Examination was made in each case *at the time of the filing of the drawback entries* rather than at some subsequent time.

Hideo Shigekawa, a liquidator and part-time baggage inspector at the Los Angeles International Airport, testified in connection with the involved drawback entries as follows (R.6–7) :

By Mr. White:

Q. I ask you, Mr. Shigekawa, to look at the drawback entries form, Customs Form 7539, I believe it is, which should be one attached to each of the 5 entries.—A. The drawback form?

Q. The drawback form. Is there not one attached to each entry?—A. Yes, I have it, sir.

Q. Well, would you look at the other 4?—A. All right. I have all 5 here, sir.

Q. And do you see on there the red ink notation as to the disallowance of the drawback?—A. Yes, I do, sir.

Q. And do you see there the initials "H.S." in each of the 5 drawbacks?—A. Yes, sir.

Q. Are those your initials?—A. Those are my initials, sir.

Q. Were you the liquidator for these 5 drawback entries?—A. I was the liquidator.

Q. And you disallowed the drawback, is that correct?—A. I disallowed the drawback entries.

Q. Why was the drawback disallowed?—A. The drawback was disallowed because there was nonexamination by the examiner. Under Section 22.32, Customs Regulations, merchandise must be returned to Customs custody and for examination.

Q. You said 22.32 of the Customs Regulations?—A. That is under for rejected merchandise, 313 (c).

And with respect to the place of deposit of the merchandise described in the involved drawback entries the witness testified that said entries called for the merchandise to be deposited at the office of Air-Sea Forwarders, Inc. (R.9).

The foregoing constitutes the salient evidence adduced by plaintiffs. Defendant presented no evidence. Plaintiffs contend that they complied with all administrative regulations and statutory prerequisites for payment of drawback, and defendant contends to the contrary.

The applicable provisions of 19 U.S.C.A., section 1313 (section 313, Tariff Act of 1930, as amended) read as follows:

#### Merchandise not conforming to sample or specifications

(c) Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

\* \* \* \* \* \* \*

#### Regulations

(i) Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe, which may include,

but need not be limited to, the fixing of a time limit within which drawback entries or entries for refund under any of the provisions of this section or section 1309(b) of this title shall be filed and completed, and the designation of the person to whom any refund or payment of drawback shall be made.

In connection particularly with the handling of drawback entries and the return of rejected merchandise to customs custody section 22.33 of the Customs Regulations reads in relevant part:

### Return of merchandise to customs custody

(a) Upon receipt of the drawback entry, the collector shall assign a number thereto, by appropriate notation on all copies, approve the place of deposit of the merchandise specified by the person making the entry or designate another place if that one is not deemed suitable, and return the original to the entrant for presentation with the merchandise to the customs officer at the place of deposit. The merchandise shall be delivered into customs custody at such place within 90 days after the date on which it was originally released from customs custody unless, either before or after the return of the merchandise, a longer time is specially authorized by the Bureau, or by the collector under the authority of this paragraph. . . . If the merchandise is to be exported otherwise than by mail, one copy of the entry shall be returned to the entrant, for resubmission to the collector in accordance with paragraph (e). A receipt showing the fact and date of such delivery shall be furnished to the applicant if he requests it. If the report of the receiving officer shows that the merchandise was not returned to customs custody within the time required by law, the drawback shall be denied.

* * * * * * *

(e) The entrant shall be advised of the approval of his entry and mailing of the merchandise or of the disapproval of his entry. If the entry has been approved and the merchandise is to be exported otherwise than by mail, the importer or whoever shall have been designated by the importer in writing shall file with the collector, at least 6 hours before lading of the merchandise, a copy of the entry with the name of the exporting carrier and the place of lading shown thereon and the exporter's declaration thereon fully executed. The export procedure and liquidation of the entry shall be the same, so far as applicable, as in the case of an exportation of merchandise from continuous customs custody with benefit of drawback. If the drawback is denied, the entrant shall advise the collector as to the disposition to be made of the merchandise.

And in this same connection section 22.33 of the Customs Manual reads in relevant part:

(a) Upon receipt of the original drawback entry, customs Form 7539, the customs officer at the place of deposit shall note thereon the date on which the merchandise was received or customs custody assumed and return it to the collector. Customs officers shall not

receive or assume custody of the merchandise until the original of the drawback entry approved by the collector is presented at the place of deposit of the merchandise.

(b) If it appears from the report of the receiving officer that the merchandise was returned to customs custody within the time required by law, the original of the drawback entry, its supporting documents, the samples, and specifications, and the import invoice, if any, covering the merchandise shall be transmitted to the appraiser or other qualified customs officer who shall cause the merchandise to be examined and, if the examining officer finds the importer's claim well founded, he shall supervise the repacking of the merchandise when repacking is necessary. After the merchandise has been examined and, when necessary, repacked, the drawback entry and accompanying documents shall be returned to the collector with a report as to whether or not the merchandise has been identified with the import invoice, whether or not it conforms to sample or specifications, and whether or not the quantity agrees with that stated in the application. The notification to an importer of the approval or disapproval of his drawback entry on customs Form 7539 shall include a notice of the time allowed for removing the merchandise from Government premises without a charge for storage thereon.

Upon receipt of the copy of the entry with export particulars where exportation is otherwise than by mail, the collector shall note thereon the date and hour of its receipt.

The foregoing statute and regulations provide a very meticulous procedure for the handling and disposition of drawback entries covering rejected merchandise. And it is clear to this court that by these standards plaintiffs cannot succeed in their claim for drawback here, primarily because the evidence discloses that the involved merchandise was never returned to customs custody. It is upon the timely return of rejected merchandise to customs custody as mandated by section 1313(c) that the regulatory procedure outlined above for the examination and lading of such merchandise aboard an outward bound carrier is set into motion. And the burden of responsibility to effect delivery of rejected merchandise into customs custody is placed upon the entrant.

In the instant case plaintiffs offered no testimonial or other evidence to establish that the original drawback entry papers at bar as approved by the collector were delivered by plaintiffs over to a customs receiving officer at the place of deposit which, in this case, was the office of plaintiff Air-Sea Forwarders, Inc. In the absence of such proof and of the prerequisite certification by a customs receiving officer relative to the resumption of customs custody of the merchandise, there is no reason for the court to suppose that the collector had any occasion for ordering an examination of the subject merchandise—lacking as he did the necessary documentation as to the timely return to customs

custody of such merchandise. We regard the ORDER FOR EXAMINATION appearing on the subject entries *prematurely* as being merely the collector's approval of the entries *per se* and designation of the place of deposit, there being no other or more appropriate place on the customs form 7539 for him to separately indicate such requisite approval for the benefit and use of the customs receiving officer.

There is some testimonial and documentary evidence in the record to the effect that the practice relating to the examination of rejected merchandise at Los Angeles differed somewhat from that prescribed by the regulations. But the circumstances connected with this local practice appear to have involved the *place of lading* as distinguished from the *place of deposit*, which, of course, is subsequent in point of time and consequence to the threshold inquiry we make here relative to the return of the merchandise to customs custody, and is, therefore, of no moment in the case. And neither is there any basis in the case for a predicate of *constructive customs custody* as contended for by plaintiffs, if such be possible. Plaintiffs offered no testimonial or other evidence to establish the unavailability of a customs receiving officer at the approved place of deposit to receive the original drawback entries and assume *customs custody of the involved merchandise.*

Therefore, under the circumstances revealed in this record plaintiffs have wholly failed to bring themselves within the requirements of the statute so as to be entitled to the claimed drawback refund. *Cf. Swan Tricot Mills Corporation* v. *United States,* 63 Cust. Ct. 530, C.D. 3948 (decided December 30, 1969). Consequently, the protest is overruled.

Judgment will be entered herein accordingly.