(C. D. 1344)

ROMAR TRADING CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 6, 1951)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Joseph E. Weil* and *John J. McDermott,* special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., dissenting

MOLLISON, Judge:    This protest is against the refusal of the collector of customs to allow drawback under section 313 (a) of the Tariff Act of 1930 (19 U. S. C. § 1313 (a)) upon the exportation of goods manufactured in the United States with the use of imported materials. The ground of refusal was that the completed articles were not exported within 3 years after importation of the imported material as required by section 313 (h) of the said act.    For ready reference the cited provisions of the act are quoted in the margin.[1]

The plaintiff herein does not deny that actual exportation of the goods took place more than 3 years after the importation of the material with the use of which they were made, but alleges that it was prevented from exporting the said goods within the 3-year limitation by reason of the exigencies of war, wartime controls, and the act of a governmental agency over which it had no power or control, and although it is not specifically so stated in the protest, it appears to be the plaintiff's contention that the 3-year limitation expressed in section 313 (h), *supra*, was thereby suspended as to the goods in issue.

The imported material consisted of certain woolen piece goods which were imported into the port of New York and entered for warehouse on June 12, 1940.    On April 2, 1942, the merchandise was withdrawn from bonded warehouse and the duties thereon paid, and it was subsequently waterproofed.    It was desired to export the waterproofed goods with benefit of drawback, but as the country was then actively engaged in war it was necessary that a license to export the same be secured from the governmental agency then known as the Board of Economic Warfare (the name of which was later changed to the Foreign Economic Administration).

Application for such a license was made under date of April 1, 1943, and was received by the Board on April 5, 1943.    According to a note attached to the application (which is before us as plaintiff's collective exhibit 1 herein), on or about September 21, 1943, the

---

[1] (a)    ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after the date of the enactment of this Act.    Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

(h)    TIME LIMITATION ON EXPORTATION.—No drawback shall be allowed under the provisions of this section or of section 6 of the Act entitled "An Act temporarily to provide revenue for the Philippine Islands, and for other purposes," approved March 8, 1902 (relating to drawback on shipments to the Philippine Islands). unless the completed article is exported, or shipped to the Philippine Islands, within three years after importation of the imported merchandise.

application was returned to the applicant without action, the note reading as follows:

OFFICE OF ECONOMIC WARFARE
Washington, D. C.

Date 9/21/43

We regret that it is necessary to return unprocessed your application for a United States Export License to Switzerland (Case No. 1602082). Final action on certain applications for this destination must be indefinitely deferred and they are, accordingly, being returned to the applicants by the Office of Economic Warfare.

Counsel for the parties have agreed that this "was regarded as a rejection of the application *pro tem.*"

The president and treasurer of the plaintiff corporation testified that thereafter he was in constant touch with the Swiss Cargo Commissioner of the Swiss General Consulate in New York; that he twice went personally to the Swiss Legation, and in April 1944, went to the Board of Economic Warfare's Export Control Division, all without success in securing an export license. Finally, a second application was made on April 19, 1945, obviously as the result of the continuous efforts of the plaintiff's representatives, and the required license was issued on June 23, 1945. The merchandise was exported on July 31, 1945.

From the time the woolen piece goods were imported into the United States until the waterproofed goods manufactured therefrom were exported, 5 years and 1½ months elapsed. From the time the imported goods were withdrawn from warehouse until the waterproofed goods were exported, 3 years, 3 months, and 29 days elapsed. From the time of the receipt of original application by the Board of Economic Warfare until an export license was issued, 2 years, 2 months, and 20 days elapsed.

In support of its contention plaintiff has cited in the brief filed in its behalf certain cases which arose under the provisions of the Tariff Act of 1922. Aside from being distinguishable upon other grounds, that act did not contain a mandatory statutory provision such as is contained in section 313 (h) of the present act limiting the time within which completed articles must be exported in order to secure the payment of drawback, and such cases are not, therefore, in point.

Also cited as a recognition of the principle of "impossibility to perform because of circumstances outside the control of the plaintiff" is the case of *E. Fucini & Co., Inc.* v. *United States,* 4 Cust. Ct. 174, C. D. 317. That case did not involve the time limitation provision of section 313 (h), *supra,* but an actual statute of limitations, section 514 of the Tariff Act of 1930, and, furthermore, it was not there held that circumstances outside the control of the plaintiff suspended or tolled the statute of limitations, but that a purported liquidation

which was not complete did not become final and conclusive after 60 days from the date thereof so as to commence the running of the statute of limitations. It is therefore not in point here.

The plaintiff herein has referred to drawback as a right and an implied contract with the Government, citing *Campbell* v. *United States*, 107 U. S. 407. In the *Campbell* case the claimant for drawback was shown to have complied with all applicable provisions of law and all applicable regulations prescribed by the Secretary of the Treasury under · authority of law in order to obtain drawback upon certain exported linseed oil cake manufactured in the United States with the use of imported duty-paid linseed, but the collector of customs, upon instructions of the Secretary of the Treasury, refused to certify the amount to which the claimant was entitled as drawback, and consequently payment was not made. It will be noted that in that case all of the acts required by the law and regulations to be done by the claimant in order to entitle him to drawback had been done, so that what was at stake was the claimant's *right to receive payment*, not a right to export with benefit of drawback. Having done everything that the law and the regulations required to be done, the claimant had a right to receive payment, and the court held that this could not be defeated by the refusal of the Secretary of the Treasury or the officers of the customs to act in the matter. That case stands on a far different basis than the case at bar.

Just as there is no vested right to import goods (*Buttfield* v. *Stranahan*, 192 U. S. 470), there is no vested right to export goods with benefit of drawback. Congress may subject drawback (which involves the exportation of goods) to any conditions it may see fit to impose, as it did when it empowered the President to prohibit or curtail exportations in the act of June 30, 1942, c. 461, 56 Stat. 463; 50 U. S. C., App. § 701, and conferred upon the then Board of Economic Warfare the performance of the functions and duties of the President under the said act, under the authority of which license to export the goods here involved was withheld.

The drawback provisions of the tariff act confer upon persons who wish to comply with them a privilege—not a right. *Swan and Finch Company* v. *United States*, 190 U. S. 143, 146; *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199. The right to recover drawback, i. e., receive payment, arises only when all of the provisions of the statute and the applicable and lawful regulations prescribed under its authority have been complied with. Until the privilege has been ripened into a right to recover, it may be regulated or even so circumscribed by the Congress as to be impossible of utilization, and this must be especially true when the reason for preventing the fulfillment of the requirements of the drawback pro-

visions by barring exportation is based upon the national interest in time of war, as here. It seems not improper to say that the national interest concerned was for the benefit of this plaintiff as well as all others in this country.

Plaintiff has pointed to no statutory law suspending the time limitation provisions of the drawback statute, such as was enacted by the Congress as § 3804 of the Internal Revenue Code (26 U. S. C.) postponing the time for performing certain acts required by the said code and found to be impossible or impracticable by reason of war. Nor has our attention been directed to any judicial determination which directly or by analogy could be held to have the same effect.

Some reference is made in the brief filed on behalf of the plaintiff to the principles of equity as having applicability to the present controversy. Assuming that this court has equitable powers, no ground for their exercise has been advanced by the plaintiff. The appeal here is not to good conscience but for the dispensation of benevolence, which is not within the power of this or any other court to exercise in the face of mandatory provisions of the law.

There was received in evidence as exhibit 2 at the trial of the issue a copy of a letter dated July 21, 1945, addressed to the collector of customs at the port of New York by the Commissioner of Customs. In the said letter it is made clear that the Bureau of Customs was of the opinion that—

* * * the 3-year period [of Section 313 (h), Tariff Act of 1930, *supra*] *must be considered as having been suspended* from April 5, 1943, the date on which the application for the license was filed, until the date when the application was either granted or denied by the Board of Economic Warfare. [Italics added.]

but that the Bureau was—

* * * not favorably impressed with the merits of the Romar Company's claim in its letter of June 28, 1945 that "continuous efforts" were made by it since April 1943 to obtain an export license for the 20 pieces in question.

This court has heard the evidence on the point and is "favorably impressed" and holds as a matter of fact that the plaintiff did make continuous efforts to obtain an export license from the time of the filing of the original application for an export license on April 5, 1943, until such license was finally granted on June 23, 1945, but on the law as it presently stands is unable to order reliquidation of the drawback entry involved and payment of drawback thereon. It may well be that an administrative agency finds itself unfettered by the law's requirements, and may "consider" the provisions of section 313 (h) to have been suspended as stated, but this court is unable by fiat to dispense with legal requirements, however meritorious the reasons for so doing may seem.

For the reasons stated judgment will issue overruling the protest claim accordingly.

### DISSENTING OPINION

COLE, Judge: It is fair to say that but for the intervention of war with consequent Presidential order suspending operation of the drawback statute, section 313 (h) of the Tariff Act of 1930, plaintiff's request for license to export would have been granted, the merchandise would have been exported with benefit of drawback, and this case would not be here. Solely because a wartime agency, the Board of Economic Warfare (later known as the Foreign Economic Administration), would not permit exportation of merchandise, such as is involved in this litigation, was plaintiff unable to obtain the license ordinarily issued under normal conditions. The Government in its effort to defeat this very fair and just claim goes so far as to argue that the action of the Board of Economic Warfare was in furtherance of the war effort of this country because of the possibility that these woolen piece goods might have been urgently needed during the period of war. That the merchandise was never used for such purpose is sufficient to show the fallacy of the statement. At the same time, I cannot lose sight of the fact that hazardous shipping conditions on the very dates vital to the present issue caused drastic curtailment of shipping facilities so as to meet the absolute minimum permitted by foreign blockades and protective measures that were provided.

During the trial of this case, the disclosure of what took place so shocked the court, three judges presiding at the time, each expressed himself in unmistakable fashion. For instance, the record shows Judge Mollison saying:

Now, Mr. Weil, if there were substantial compliance and if it were shown by the plaintiff that through no fault of his, plaintiff was prevented, by reason of the action of the Office of Economic Warfare, and by reason of this regulation or directive under which it acted, if plaintiff were prevented from carrying through and accomplishing his application for drawback, then why wouldn't we have a circumstance where the plaintiff's compliance with this law was impossible and occurred through no fault of his own?

Then we find Chief Judge Oliver saying that "there should be" some relief in the law to meet such a situation as presented herein.

I need not quote any of my own observations during the trial because I feel it is not only a most unjustifiable act to deny relief to plaintiff, but under these circumstances, unchallenged and undisputed as they are, the Government must accept responsibility for its legally constituted agencies, whether created by Congress or set up, as in this instance, by Executive order.

I am in accord with the attitude of the Bureau of Customs expressed in the letter of July 21, 1945, from the Commissioner of Customs to the collector of customs at New York (plaintiff's exhibit 2), as follows:

* * * In its letter of July 5, 1943, the Bureau expressed the opinion that the 3-year period must be considered as having been suspended from April 5, 1943, the date on which the application for the license was filed, until the date when the application was either granted or denied by the Board of Economic Warfare.

In the light of the foregoing quotation, it should be emphasized that there never was an absolute denial of plaintiff's application. It was "Returned without Action," and this "was regarded, as a rejection of the application *pro tem*," exhibit 2, *supra*.

I cannot bring myself to support the majority's views in this case.