(C. D. 1587)

GENERAL MOTORS CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 17, 1954)

*Henry M. Hogan* (*Walter R. Frizzell* and *Donald K. Barnes* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: This protest is directed against the action of the collector of customs at Detroit, Mich., in refusing to allow drawback upon the exportation of certain automobile body parts manufactured in the United States with the use of certain ferrous metal, to wit, steel, of the same kind and quality as certain steel which had been previously imported and upon which duties had been paid. The protest claim is made under section 313 (b), as amended, of the Tariff Act of 1930, the so-called "substituted materials" provision of the drawback statute. The said provision, as amended by Public Law No. 109, approved August 8, 1951, 65 Stat. 175; 86 Treas. Dec. 309, T. D. 52794, so far as pertinent, reads as follows:

SEC. 313.  DRAWBACK AND REFUNDS.

(a)  ARTICLES MADE FROM IMPORTED MERCHANDISE.—* * *.

(b)  SUBSTITUTION FOR DRAWBACK PURPOSES.—If imported duty-paid * * * metal * * * and duty-free or domestic merchandise of the same kind and quality are used in the manufacture or production of articles within a period not to exceed one year from the receipt of such imported merchandise by the manufacturer or producer of such articles, there shall be allowed upon the exportation of any such articles, notwithstanding the fact that none of the imported merchandise may actually have been used in the manufacture or production of the exported articles, an amount of drawback equal to that which would have been allowable had the * * * metal * * * used therein been imported; but the total amount of drawback allowed upon the exportation of such articles, together with the total amount of drawback allowed in respect of such imported merchandise under any other provision of law, shall not exceed 99 per centum of the duty paid on such imported merchandise.

It should be noted that prior to August 8, 1951, the substitution privilege in section 313 (b), *supra*, so far as metals were concerned, was limited to nonferrous metals.

Drawback was denied by the collector upon the ground that the imported steel designated as the basis for the allowance of drawback was imported prior to August 8, 1951, the date when section 313 (b), *supra*, was amended so as to include ferrous metal among the materials as to which the substitution privilege might be applied for drawback purposes. As authority for his action, the collector of customs in his letter transmitting the protest to this court refers to T. D. 52935, reported in 87 Treas. Dec. 57, a Bureau of Customs ruling, the pertinent portion of which, on page 58, reads as follows:

A question having arisen in regard thereto [to the application of the provisions of section 313 (b), as amended, *supra*], the Bureau holds that no imported ferrous metal * * * may legally be designated as the basis for the allowance of drawback under section 313 (b), *supra*, if such merchandise was entered for consumption, or withdrawn from warehouse for consumption, prior to August 8, 1951 (the date on which Public Law 109 was approved). * * *

When the case was called for hearing before this court, it was submitted for decision upon a stipulation of counsel obviously designed to be an agreement that all the statutory requirements, as well as the requirements of the customs regulations, to entitle the plaintiff to the drawback claimed, had been complied with, except that the imported ferrous metal designated in the claim for drawback had been imported prior to August 8, 1951, the effective date of Public Law 109.

The sole issue before us, therefore, is one of law, to wit, whether the provisions of section 313 (b), as amended August 8, 1951, require that the importation of ferrous metal related to exported articles on which drawback is claimed shall have occurred on or subsequently to August 8, 1951.

It is the plaintiff's position that section 313 (b), as amended, provides for the allowance of drawback upon the happening of a certain event, to wit, "upon the exportation" of articles which have been manufactured or produced in the United States under certain conditions, and that neither directly nor by inference is there any requirement that the imported material related to the exported articles shall have been imported on or after August 8, 1951.

A mere reading of the statutory provision shows this to be so. Quite obviously, the statute could be effective only as to exportations made on or after August 8, 1951, but there is nothing to evidence any intent on the part of Congress to place any time requirement upon the imported material related to the exported articles other than that it be used in the manufacture and production of articles within a period of 1 year from the receipt of the imported material by the manufacturer or producer of the articles. According to the record, that re-

quirement was met in this case. The imposition of a time requirement of importation on or after August 8, 1951, would simply add a condition that Congress did not see fit to make.

Counsel for both parties have discussed and referred in their briefs to certain "rights" in connection with drawback, and we are of the opinion that a treatment of this subject may clarify the matter.

First of all, it seems clear that there is no "right" to drawback in the sense of a vested or absolute right. *Romar Trading Co., Inc.* v. *United States*, 27 Cust. Ct. 34, C. D. 1344. The drawback provisions of the statute represent a governmental grant of privilege. *Swan & Finch Company* v. *United States*, 190 U. S. 143, 47 L. ed. 984. Ordinarily, when merchandise is imported as to which the drawback statute may become applicable, an inchoate right, or a "right accruing," arises, and as the merchandise progresses by way of manufacture or production in the United States, use in certain ways, etc., the inchoate or accruing right ripens, until upon exportation of the merchandise or article in accordance with the statute and regulations pertaining thereto, the inchoate or accruing right becomes an absolute right to receive payment, as drawback, of the amounts specified by the statute. *Campbell* v. *United States*, 107 U. S. 407, 27 L. ed. 592.

Up to the time when exportation in accordance with the statute and regulations has occurred and the right to receive payment has arisen, the privilege of exportation with benefit of drawback may be defeated or modified by the Congress. *Romar Trading Co., Inc.* v. *United States, supra,* was an example wherein Congress had empowered the President to prohibit or curtail exportations, as an incident to which it became impossible to export, within the 3-year statutory period, certain articles manufactured in the United States with the use of imported material. It was held that even though the claimant had done all in its power to accomplish exportation of the merchandise in accordance with the drawback statute, and the failure to do so was not its fault, the accruing right had not ripened into a right to recover.

In another case, *The Mengel Co.* v. *United States*, 20 C. C. P. A. (Customs) 399, T. D. 46232, certain merchandise was imported during the life of the Tariff Act of 1922. Section 651 of the Tariff Act of 1930 repealed the Tariff Act of 1922, saving "any right accruing or accrued * * * prior to such repeal." The articles there involved were manufactured or produced in the United States with the use of imported material, but exportation, which took place after the Tariff Act of 1930 became effective, did not occur until more than 3 years after importation. The drawback provisions of the Tariff Act of 1930 contained a 3-year limitation period after importation within which exportation must take place in order to secure drawback upon articles manufactured or produced in the United States with the use of imported material. The Tariff Act of 1922 had contained no such

limitation, and it was held that the saving clause of the repealing statute preserved the inchoate or accruing right and permitted recovery under the terms and conditions of the Tariff Act of 1922.

However, we have here no question of repealing statutes or saving clauses, which were the basis for the decision in *The Mengel Co.* case, and, rather than Congress defeating or modifying an accruing right, as was the case in the *Romar Trading Co., Inc.*, case, we have here Congress creating a privilege in the sense of extending its operation to situations and merchandise it did not previously cover.

Clearly, there was no accruing right, prior to August 8, 1951, as to the imported steel herein to have substituted for it, with benefit of drawback, domestic merchandise of the same class or kind. But there can be no question that Congress had the power to extend the privilege to such merchandise if it chose to do so, and we think that by the simple and appropriate language used in Public Law 109 it did choose to do so. Just as Congress might cut off an accruing right, as it did in the situation involved in the *Romar Trading Co., Inc.*, case, Congress could create an accruing right or confer such a right in connection with merchandise which did not formerly possess it. The statutory language is consistent with this view.

It is true that section 313 (b), being the governmental grant of a privilege, must be construed strictly in favor of the grantor. But we may not, under the guise of strict construction, impose a condition which Congress did not impose either directly or by implication. Nothing has been called to our attention, and our research has uncovered nothing which would indicate a legislative intent to limit the operation of section 313 (b), as amended, to merchandise imported on or after August 8, 1951.

Upon the record before us, therefore, we are satisfied that the plaintiff is entitled to recover, and the protest claim for allowance of drawback under section 313 (b), as amended, of the Tariff Act of 1930 is, therefore, sustained.

Judgment will issue accordingly.